UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREL LAWSON, JAMES CURTIS, and JAMES TURNER, on behalf of themselves and other similarly-situated persons, | : : : : | Civil Action File No. |
| | : | |
| Plaintiffs, | : | _____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| CITY OF ATLANTA, GEORGIA, | : | **CLASS ACTION** |
| | : | |
| Defendant. | : : | |

## CLASS ACTION COMPLAINT

### I.      Introduction

1.      This is a proposed class action for discrimination on the basis of

disability brought pursuant to Title II of the Americans with Disabilities Act, 42

U.S.C. §12131 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 701 ("Rehabilitation Act"), based on the City of Atlanta, Georgia's (the

"City's") systemic failure to maintain sidewalks that are equally accessible to

persons with mobility impairments.

2.      Among the community of disabled people living and working in the

metropolitan Atlanta area, it is well known that the public rights of way within

the City are, on the whole, difficult and sometimes impossible to navigate for those who rely on wheelchairs or similar devices for mobility.

3.      A disabled person traveling in any given neighborhood of Atlanta will encounter along his or her path broken and uneven sidewalks, sidewalks obstructed by trees or utility poles, sidewalks obstructed by ongoing construction, intersections with missing curb ramps, curb ramps that are broken or otherwise unusable, and other impediments.

4.      Navigating sidewalks and intersections in this condition is a dangerous enterprise. Disabled people often find themselves having to go into the street and move alongside vehicle traffic, at risk to life and limb.

5.      Navigating sidewalks and intersections in this condition can be physically painful, jarring the person's body or causing them to fall to the ground as they roll along uneven, broken pavement, holes in the right of way, or curb ramps that are not flush to the ground.

6.      Many disabled people simply avoid going out into the world, fearing that they will become stuck at an intersection lacking a curb ramp, or that they will be unable to travel along a broken sidewalk.

7.      This is not merely the result of a few sidewalks having fallen into disrepair. This is the result of a systemic, knowing failure by the City to maintain its public rights of way, on the whole, in a manner to ensure that they are equally

accessible to people with mobility impairments. As shown herein, the City has been aware for many years of defects in a substantial percentage of its public rights of way, and has failed to budget sufficient funds or to commit sufficient resources to address the problem and maintain rights of way in a safe, ADA-compliant condition.

8.     The named Plaintiffs are individuals with disabilities who rely on ADA-compliant sidewalks, curb ramps, pedestrian crossings, and other walkways (collectively "public rights of way") to meaningfully access and participate in the many services, programs, and activities offered to the City's residents and visitors. They seek relief on behalf of themselves and a class of similarly-situated persons who, because of the City's failure to maintain ADA-compliant public rights-of-way, are denied equal access to the City's public services.

9.     Plaintiffs seek an order from this Court requiring the City to comply with the ADA and Rehabilitation Act by making reasonable modifications to its public rights of way, and meaningful adjustments to its policies and practices, so that Plaintiffs and those similarly situated may participate in and have meaningful access to the City's services, programs, and activities.

II.     <u>Jurisdiction and Venue</u>

10.    The Court has federal question jurisdiction of this action, 28 U.S.C. §
1331, because it arises under federal law, namely Title II of the Americans with
Disabilities Act, 42 U.S.C. § 12132, and the Section 504 of the Rehabilitation Act of
1973, 29 U.S.C. § 794 *et seq.*

11.    Venue is proper in this district and division as the wrongs giving
rise to Plaintiffs' complaint took place herein.

12.    This Court has personal jurisdiction over the City, which is a
municipal corporation organized according to the laws of the state of Georgia.

III.    <u>Parties</u>

13.    Plaintiff Laurel Lawson ("Ms. Lawson") is a software engineer,
performance artist, and athlete who lives in DeKalb County, Georgia, and whose
pursuits lead her regularly to travel to and throughout the City of Atlanta.

14.    Ms. Lawson is paraplegic and uses a manual wheelchair for
mobility.

15.    Ms. Lawson is a qualified individual with a disability and an
individual with a disability within the meaning of the ADA, the Rehabilitation
Act, and all applicable regulations.

16.    Plaintiff James Curtis ("Mr. Curtis") is a resident of the City of
Atlanta, who regularly travels throughout the City. Mr. Curtis is a frequent

volunteer at the Shepherd Center, where he assists with that organization's mission to rehabilitate and support individuals with spinal and neuromuscular impairments. Mr. Curtis is a lover of music and frequently travels throughout the City to see performances and socialize with friends.

17.     Due to a neurodevelopmental disorder, Mr. Curtis relies on a wheelchair for mobility.

18.     Mr. Curtis is a qualified individual with a disability and an individual with a disability within the meaning of the ADA, the Rehabilitation Act, and all applicable regulations.

19.     Plaintiff James Turner ("Mr. Turner") is a resident of DeKalb County who frequently travels to and throughout the City of Atlanta. Mr. Turner is a full-time employee of "DisABILITY LINK," a non-profit organization that advocates for and supports individuals with disabilities throughout the metropolitan Atlanta area.

20.     Mr. Turner has cerebral palsy and utilizes a wheelchair for mobility.

21.     Plaintiff Turner is a qualified individual with a disability within the meaning of the ADA, the Rehabilitation Act, and all applicable regulations.

22.     The proposed Plaintiff Class consists of all persons with mobility impairments who desire access to the City's public rights of way.

23.     Defendant City of Atlanta is a public entity within the meaning of Title II of the ADA.

24.     Defendant City of Atlanta receives federal financial assistance within the meaning of the Rehabilitation Act.

25.     The City is responsible for repairing, maintaining, constructing, and regulating the public rights of way along roads within its boundaries.

26.     The City may be served with the summons and complaint by personal service upon the Mayor, Keisha Lance Bottoms, or her designee, at the Mayor's Office located at 55 Trinity Avenue, SW #2400, Atlanta, Georgia 30303.

**IV.    Facts**

27.     The City has failed, on a systemic level, to maintain its public rights of way in a manner compliant with the ADA and Rehabilitation Act.

28.     The City has been aware of this systemic failure since at least 2008; yet, the City has failed to act to bring its rights of way into compliance.

29.     In 2010, the City issued a report titled *2010 State of the City's Transportation Infrastructure & Fleet Inventory Report* ("the Audit") (Excerpts attached as Exhibit A).

30.     The Audit noted that a previous survey in 2008 had found that roughly 18% of the City's sidewalks were "deteriorated," and as of 2010, there had been "no substantive change to the estimate of existing deteriorated

sidewalks . . . in the City of Atlanta."

31.     The Audit found that, while there had been repairs to "minor trip hazards," and "small amounts of infrastructure replacement" between 2008 and 2010, "these replacements have been offset by further deterioration of the remaining infrastructure."

32.     The Audit found that "[t]he inner City's sidewalk network of hexagonal concrete and brick pavers are beyond the expected life of fifty years."

33.     The Audit found that the "deteriorated" sidewalks "do not meet the requirements of the Americans with Disabilities Act (ADA) of 1990."

34.     The Audit found that, as of 2010, 8,705 City intersections, on roads that had been modified or repaired since 1992 (and therefore must comply with ADA), contained non-ADA compliant curb ramps.

35.     The Audit found that, as of 2010, the City had 7,099 intersections, on roads that had been modified or repaired since 1992 (and therefore must comply with ADA) without *any* ADA curb ramps where such ramps were needed.

36.     On February 1, 2017, Michelle Wynn, the program management officer for the Renew Atlanta Bond program, testified in a deposition[1] that, of the 15,804 intersections with either no curb ramps, or non-ADA compliant curb ramps, only an estimated 5% had been brought into compliance. (See Excerpts attached as Exhibit B).

37.     Furthermore, the 2010 Audit found that funding of $152.19 million would be necessary to address the backlog of deteriorated sidewalks, with $15.18 million budgeted annually to maintain sidewalks.

38.     Ms. Wynn, in the February 1, 2017, deposition, testified that such funds have not been allocated, either to repair the backlog, or to fund ongoing maintenance.

39.     Ms. Wynn testified that some money was allocated for ramp repair as part of a "Quality of Life" bond; yet, "while you're bringing one part into compliance, there's something else that is deteriorating, worse."

40.     Ms. Wynn testified that the "Renew Atlanta Bond," which was approved by voters in March 2015, only allocated $5 million toward sidewalk

_____

[1] Ms. Wynn was designated by the City as a witness under Rule 30(b)(6) to the Federal Rules of Civil Procedure in the case of *Beckley v. City of Atlanta*, Civil Action No. 1:16-cv-01435-MHC, which was brought by a paraplegic individual who was stranded at the intersection of Martin Luther King, Jr. Blvd. and Centennial Olympic Park Blvd. after the 2015 Peach Bowl, due to the lack of curb ramps at the intersection, requiring her to roll along the busy street in post-game traffic to get to her car.

and ADA updates.

41.     To date, the City has not allocated funds sufficient to make substantial progress in repairing the enormous and growing backlog of deteriorated, non-ADA compliant sidewalks.

42.     To date, the City has not dedicated any significant funding toward annual maintenance of its sidewalk and ramp inventory in order to ensure ADA compliance.

43.     Furthermore, the City is in breach of numerous obligations that it agreed to as part of a 2009 Settlement Agreement with the United States Department of Justice that was designed to bring the City in compliance with the ADA.

44.     In 2009, the Department of Justice (DOJ) and the City entered into a settlement agreement ("the Settlement Agreement") as a result of a DOJ compliance review under the Title II of the ADA. (See Exhibit C).

45.     The City agreed to implement a written process for soliciting and receiving input from individuals with disabilities on sidewalk accessibility, including requests to add curb ramps at particular locations, in compliance with 28 C.F.R. § 35.107(b), which requires the City to establish a grievance procedure for resolving complaints of Title II violations.

46.     The City also agreed to provide curb ramps or other sloped areas at

all intersections of the streets, roads, and highways that had either been newly constructed or altered since January 26, 1992.

47.     On November 17, 2016, Lawrence Jeter, Senior Manager for the City's Department of Public Works, testified in a deposition[2] that, despite the 2009 Settlement Agreement, the City had not established a grievance procedure designed to allow disabled individuals to report non-compliant rights of way. (Excerpts Attached as Exhibit D).

48.     The City, moreover, has not complied with its obligations under the 2009 Settlement Agreement to bring into compliance even a significant number of non-compliant sidewalks and curb ramps along roads that were modified or repaired since 1992.

49.     The Georgia Tech School of Civil and Environmental Engineering has developed a "Sidewalk Sentry" application to allow users to report to a central database sidewalks and curb ramps that are deteriorated or otherwise non-accessible. As of March 9, 2018, there had been 2,158 individual reports of defective rights of way.

50.     Exhibit E, which is attached hereto, contains a small sampling of the non-compliant curb ramps, sidewalks, and other rights of way that have been identified via the Sidewalk Sentry application.

---

[2] Mr. Jeter was also a designated 30(b)(6) witness in the *Beckley* litigation.

51.    As a result of these systemic failures by the City, the individual plaintiffs, and those similarly situated, are denied equal access to the City's public rights of way, and the numerous benefits and opportunities available to non-disabled people in the City of Atlanta.

52.    Each individual plaintiff is a person who, due to a mobility impairment, is denied equal access to the City's rights of way. Therefore, each plaintiff has standing to seek the relief sought herein on behalf of him or herself and the members of the class.

53.    Each individual plaintiff has had numerous personal experiences with being unable to travel safely along public rights of way in the City due to non-compliant sidewalks.

54.    For example, Ms. Lawson often needs to traverse throughout the Inman Park and Old Fourth Ward neighborhoods, located in the City. Edgewood Avenue and its connecting streets—Euclid Avenue, Krog Street, and Boulevard Street—contain broken pavement, including uplifted pavement, and large gaps between the hexagonal sidewalk pavers.

55.    Where Edgewood Avenue intersects with Euclid Avenue, the public rights of way contain large gaps between the sidewalk pavers, including missing and broken pavers, and exposed tree roots, all of which impede Ms. Lawson's wheelchair.

56.     Further, Dixie Avenue contains broken pavement, including broken and uneven sidewalk pavers.

57.     At certain areas along these rights of way, Ms. Lawson is required to travel in the roadway due to impassable or dangerous sidewalks, placing her at risk of being hit by a vehicle.

58.     Mr. Curtis, who lives in an apartment on Peachtree Road in Atlanta, has been unable to use both Fairhaven Circle NE and Stephen Long Drive, two streets connected to Peachtree Road by Peachtree Hills Avenue.

59.     Plaintiff Curtis encounters public rights of way that are deteriorated and inaccessible. Where Peachtree Avenue connects Peachtree Road to Fairhaven Circle NE, there is uneven pavement, including broken and crumbled pavement, steep slopes, and a large dip between the sidewalk and driveways.

60.     The section of Peachtree Avenue between Stephen Long Drive and Fairhaven Circle NE contains large sidewalk cracks and gaps.  There is also a large drop-off between the sidewalk and the abutting area.

61.     Mr. Turner often uses the Five Points Marta Station located on Alabama Street in the City of Atlanta.  The streets surrounding the Marta station, including Peachtree Street NW and SW, Auburn Avenue, Wall Street, Forsyth Street, and Marietta Street, are dangerous and inaccessible to Plaintiff Turner.

62.     Where Peachtree Street, NW intersects with Auburn Avenue, the

curb ramp is not flush with the street, containing a 3.6% cross slope.  Where Wall Street intersects with Peachtree Street, SW the curb ramp is also not flush with the street.  Peachtree Street, NW also contains gaps in the pavement.

63.    Forsyth Street, in the area between Marietta Street and the Marta Station, contains gaps in the pavement and broken pavement.

64.    Additionally, the southeast corner of Marietta Street contains a ramp that is not flush with the street.

## V.    Class Action Allegations

65.    Plaintiffs bring this action against the City of Atlanta pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves individually and all other persons similarly situated.

66.    Each member of the proposed class is a "qualified individual with a disability" and/or a person with a disability within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, who requires a wheelchair, scooter, or other assistive device for mobility on sidewalks, ramps and similar rights of way.

67.    Upon information and belief, the Class is composed of hundreds or thousands of individuals and is so numerous that joinder of all Class members would be impracticable.

68.     Each Class member is a qualified individual with a disability who was denied meaningful access and participation in the City's services, programs, or activities.

69.     Plaintiffs' claims are typical of the claims of other Class members.

70.     Plaintiffs will fairly and adequately represent the interests of the absent Class members.  Plaintiffs have no claims that are antagonistic to those of the Class.

71.     Plaintiffs' attorneys are experienced in the prosecution of litigation under the ADA and with class action litigation.

72.     There are questions of law and fact common to each of the Class members, the answers to which will advance the resolution of the claims of all the Class members, without limitation:

    **a.** Whether Defendant is violating Title II of the ADA by failing to make its programs, services, and activities accessible to and useable by individuals with disabilities, resulting in discrimination against individuals with disabilities; and

    **b.** Whether Defendant is violating Section 504 of the Rehabilitation Act by failing to make its programs, services, and activities accessible to and useable by individuals with disabilities, resulting in discrimination against individuals with disabilities.

73.     Certification is appropriate under Rule 23(b)(1) of the Federal Rules of Civil Procedure because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the Defendant.

74.     Certification is also appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because there are common issues of law or fact that predominate over issues affecting individual Class members and, in addition, a class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.

## VI.     <u>Legal Claims</u>

### <u>Count I: Americans with Disabilities Act</u>

75.     By this reference, Plaintiffs incorporate the above factual statements, as if fully stated herein.

76.     Title II of the ADA states:  "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.

77.     The ADA defines "public entity" as including "any State or local government."  42 U.S.C. §12115.

78.     The City of Atlanta is a "public entity" within the meaning of Title II and is therefore covered by the ADA.

15

79.     Further, Title II of the ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. §12115.

80.     Plaintiffs are qualified individuals with disabilities within the meaning of Title II and meet the essential eligibility requirements for the receipt of the City's services, programs, or activities.

81.     The City is required to operate its services, programs, or activities in such a way that "when viewed in its entirety, is readily accessible to and useable by individuals with disabilities."  28 C.F.R. §35.150(a).

82.     Public rights of way constitute an integral service, program, or activity within the meaning of Title II.  28 C.F.R. §35.102(a).

83.     A public entity engages in discrimination when its facilities are inaccessible or unusable because individuals with disabilities are either "excluded from participation in" or "denied the benefits of the services, programs, or activities." 28 C.F.R. §35.149.

84.     The definition of facilities, as referred to in the ADA, includes public rights of way.  28 C.F.R. §35.104.

85.     Facilities constructed after January 26, 1992 must "be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities."  29 C.F.R. §35.151(a)(1).

86.     Public entities that choose to alter existing public rights of way after January 26, 1992 must, "to the maximum extent feasible," do so "in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities."  28 C.F.R. §35.151(b)(1).

87.     Resurfacing roadways, and other roadway maintenance projects, are alterations within the meaning of the ADA.

88.     A public entity must maintain all facilities that are required to be accessible to individuals with disabilities under the ADA.  28 C.F.R. §35.133(a).

89.     As described herein, the City maintains public rights of way that are not accessible to individuals with disabilities.

90.     The City has engaged in discrimination against Plaintiffs and those similarly situated by denying them meaningful access to the City's public rights of way. Hundreds of miles of the City's sidewalks, including thousands of intersections, are not accessible to and useable by persons with disabilities because of severe deterioration and architectural barriers. The City has

constructed, caused, and/or failed to correct the deterioration and access barriers.

91.     Upon information and belief, the public rights of way described herein have been constructed, altered, or improved since January 26, 1992.  The City has failed to make altered public rights of way accessible to individuals with disabilities.

92.     As a result, Plaintiffs and other persons with disabilities lack equal and meaningful access to the City's services.  Plaintiffs must either remain segregated, unable to access the City's services, or risk severe injury by attempting to traverse hazardous, inaccessible public rights of way.

93.     The City has also failed to establish a grievance procedure for individuals seeking the repair or replacement of non-compliant rights away, as required by 28 C.F.R. § 35.107(b).

94.     Integration and accessibility to public rights of way are fundamental ADA protections.  Plaintiffs are entitled to relief under Title II of the ADA, including attorneys' fees and costs.

## Count II: Section 504 of the Rehabilitation Act

95.     By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

96.     The Rehabilitation Act provides that no entity receiving federal funds shall discriminate against an individual based on that individual's disability.

97.     The City of Atlanta is an entity that receives federal funds in numerous areas.

98.     "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

99.     "Discrimination" in this context includes the provision of public rights of way for pedestrians as a whole, yet not making reasonable modifications to those areas for people who rely on wheelchairs or similar mobility devices.

100.    As described herein, the City maintains public rights of way that are not accessible to all people who rely on mobility devices, including wheelchairs.

101.    Plaintiffs are entitled to relief under the Rehabilitation Act, including an order that the City make reasonable modifications to the public rights of way.

102.    Plaintiffs are entitled to recover compensatory damages for the harm they have experienced, including fear, humiliation, anger, and other forms of emotional distress, as a result of the violations of the Rehabilitation Act described herein, due to the City's deliberate indifference to the rights of people with disabilities.

WHEREFORE, Plaintiffs pray:

a.  That the Court certify the following Class pursuant to Rule 23 of the

Federal Rules of Civil Procedure:

All persons with mobility impairments who have been denied equal access to pedestrian rights of way in the City of Atlanta as a result of the City's policies and practices with regard to repair and maintenance of its pedestrian rights of way.

b.  That the Court appoint the firms of Radford & Keebaugh, LLC and

Parks, Chesin & Walbert, P.C. as Class Counsel to represent the

interests of the Class;

c.  That the Court declare the City to be in violation of the ADA and

Rehabilitation Act due to its failure to maintain its public rights of

way in a manner equally accessible to disabled people;

d.  That the Court enter a permanent injunction,

i.  Requiring the City to obtain an updated, comprehensive audit

by a neutral third party approved by the Court, of the City's

inventory of sidewalks and intersection access nodes, for

purposes of determining ADA compliance;

ii.  Requiring the City to allocate funds sufficient to bring

currently non-compliant rights of way into ADA compliance;

iii.  Requiring the City to bring currently non-compliant rights of way into ADA compliance;

iv.  Requiring the City to establish a dedicated means by which individuals can report to the City rights of way that are not accessible to disabled people;

v.  Requiring the City to budget future funds to maintain rights of way in an ADA-compliant manner;

vi.  Requiring the City to maintain, on an ongoing basis, its public rights of way in a manner compliant with the ADA;

vii.  Maintaining continuing jurisdiction for a reasonable period of time in order to ensure compliance with the Court's order;

viii.  Appointment of Class Counsel to monitor compliance with the Court's order.

e.  For a trial by jury;

f.  That Class Counsel be awarded reasonable attorneys' fees and costs; and

g.  That the Court grant other legal and equitable relief as the court finds appropriate.

Respectfully submitted this May 24, 2018.

*/s/ James Radford*
_____

James Radford
Georgia Bar No. 108007
Regan Keebaugh
Georgia Bar No. 535500

RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com
regan@decaturlegal.com

*/s/ Andrew Y. Coffman*
_____

Andrew Y. Coffman
Georgia Bar No. 173115
A. Lee Parks, Jr.
Georgia Bar. No. 563750
J. Daniel Cole
Georgia Bar No. 450675

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth Street, N.E., 26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
acoffman@pcwlawfirm.com

*Counsel for Plaintiffs*
