UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREL LAWSON, JAMES CURTIS, and JAMES TURNER, on behalf of themselves and other similarly-situated persons, | : : : : | Civil Action File No. |
| | : | |
| Plaintiffs, | : | 1:18-CV-2484-SCJ |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | **CLASS ACTION** |
| CITY OF ATLANTA, GEORGIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## AMENDED CLASS ACTION COMPLAINT

### I.  Introduction

1.     This is a proposed class action for discrimination on the basis of disability brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act"), based on the City of Atlanta, Georgia's (the "City's") systemic failure to maintain sidewalks that are equally accessible to persons with mobility impairments.

2.     This *Amended Complaint* is designed to address arguments made by the City in a *Motion to Dismiss* [Doc. 8], in which the City contends that certain

factual allegations necessary to state a plausible claim are missing.

3.      Among the community of disabled people living and working in the metropolitan Atlanta area, it is well known that the public rights of way within the City are, on the whole, difficult and sometimes impossible to navigate for those who rely on wheelchairs or similar devices for mobility.

4.      A disabled person traveling in any given neighborhood of Atlanta will encounter along his or her path broken and uneven sidewalks, sidewalks obstructed by trees or utility poles, sidewalks obstructed by ongoing construction, intersections with missing curb ramps, curb ramps that are broken or otherwise unusable, and other impediments.

5.      Navigating sidewalks and intersections in this condition is a dangerous enterprise. Disabled people often find themselves having to go into the street and move alongside vehicle traffic, at risk to life and limb.

6.      Navigating sidewalks and intersections in this condition can be physically painful, jarring the person's body or causing them to fall to the ground as they roll along uneven, broken pavement, holes in the right of way, or curb ramps that are not flush to the ground.

7.      Many disabled people simply avoid going out into the world, fearing that they will become stuck at an intersection lacking a curb ramp, or that they will be unable to travel along a broken sidewalk.

8.      This is not merely the result of a few sidewalks having fallen into disrepair. This is the result of a systemic, knowing failure by the City to maintain its public rights of way, on the whole, in a manner to ensure that they are equally accessible to people with mobility impairments. As shown herein, the City has been aware for many years of defects in a substantial percentage of its public rights of way, and has failed to budget sufficient funds or to commit sufficient resources to address the problem and maintain rights of way in a safe, ADA-compliant condition.

9.      The named Plaintiffs are individuals with disabilities who rely on ADA-compliant sidewalks, curb ramps, pedestrian crossings, and other walkways (collectively "public rights of way") to meaningfully access and participate in the many services, programs, and activities offered to the City's residents and visitors. They seek relief on behalf of themselves and a class of similarly-situated persons who, because of the City's failure to maintain ADA-compliant public rights-of-way, are denied equal access to the City's public services.

10.      Plaintiffs seek an order from this Court requiring the City to comply with the ADA and Rehabilitation Act by making reasonable modifications to its public rights of way, and meaningful adjustments to its policies and practices, so that Plaintiffs and those similarly situated may participate in and have

meaningful access to the City's services, programs, and activities.

## II.   Jurisdiction and Venue

11.   The Court has federal question jurisdiction of this action, 28 U.S.C. § 1331, because it arises under federal law, namely Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*

12.   Venue is proper in this district and division as the wrongs giving rise to Plaintiffs' complaint took place herein.

13.   This Court has personal jurisdiction over the City, which is a municipal corporation organized according to the laws of the state of Georgia.

## III.   Parties

14.   Plaintiff Laurel Lawson ("Ms. Lawson") is a software engineer, performance artist, and athlete who lives in DeKalb County, Georgia, and whose pursuits lead her regularly to travel to and throughout the City of Atlanta.

15.   Ms. Lawson is paraplegic and uses a manual wheelchair for mobility.

16.   Ms. Lawson is a qualified individual with a disability and an individual with a disability within the meaning of the ADA, the Rehabilitation Act, and all applicable regulations.

17.     Plaintiff James Curtis ("Mr. Curtis") is a resident of the City of Atlanta, who regularly travels throughout the City. Mr. Curtis is a frequent volunteer at the Shepherd Center, where he assists with that organization's mission to rehabilitate and support individuals with spinal and neuromuscular impairments. Mr. Curtis is a lover of music and frequently travels throughout the City to see performances and socialize with friends.

18.     Due to a neurodevelopmental disorder, Mr. Curtis relies on a wheelchair for mobility.

19.     Mr. Curtis is a qualified individual with a disability and an individual with a disability within the meaning of the ADA, the Rehabilitation Act, and all applicable regulations.

20.     Plaintiff James Turner ("Mr. Turner") is a resident of DeKalb County who frequently travels to and throughout the City of Atlanta. Mr. Turner is a full-time employee of "DisABILITY LINK," a non-profit organization that advocates for and supports individuals with disabilities throughout the metropolitan Atlanta area.

21.     Mr. Turner has cerebral palsy and utilizes a wheelchair for mobility.

22.     Plaintiff Turner is a qualified individual with a disability within the meaning of the ADA, the Rehabilitation Act, and all applicable regulations.

23.     The proposed Plaintiff Class consists of all persons with mobility impairments who desire access to the City's public rights of way.

24.     Defendant City of Atlanta is a public entity within the meaning of Title II of the ADA.

25.     Defendant City of Atlanta receives federal financial assistance within the meaning of the Rehabilitation Act.

26.     The City's receipt of federal funds includes, but is not limited to, federal funds it receives for pedestrian facilities improvement through the Livable Centers Initiative (LCI) program managed by the Atlanta Regional Commission (ARC), a federally-designated Metropolitan Capital Improvements Program.  Funds received for this program specifically include funding for sidewalks and pedestrian facilities.

27.     The City's receipt of federal funds includes, but is not limited to, grants received from the federal Department of Housing and Urban Development (HUD), including Community Development Block Grants designed to fund improvements that include the construction and renovation of sidewalks and streets.

28.     The City is responsible for repairing, maintaining, constructing, and regulating the public rights of way along roads within its boundaries.

29.    The City may be served with the summons and complaint by personal service upon the Mayor, Keisha Lance Bottoms, or her designee, at the Mayor's Office located at 55 Trinity Avenue, SW #2400, Atlanta, Georgia 30303.

IV.    **Facts**

30.    The City has failed, on a systemic level, to maintain its public rights of way in a manner compliant with the ADA and Rehabilitation Act.

31.    The City has been aware of this systemic failure since at least 2008; yet, the City has failed to act to bring its rights of way into compliance.

32.    In 2010, the City issued a report titled *2010 State of the City's Transportation Infrastructure & Fleet Inventory Report* ("the Audit") (Excerpts attached as Exhibit A to the original *Class Action Complaint* [Doc. 1-1]).

33.    The Audit noted that a previous survey in 2008 had found that roughly 18% of the City's sidewalks were "deteriorated," and as of 2010, there had been "no substantive change to the estimate of existing deteriorated sidewalks . . . in the City of Atlanta."

34.    The Audit found that, while there had been repairs to "minor trip hazards," and "small amounts of infrastructure replacement" between 2008 and 2010, "these replacements have been offset by further deterioration of the remaining infrastructure."

35.    The Audit found that "[t]he inner City's sidewalk network of

hexagonal concrete and brick pavers are beyond the expected life of fifty years."

36.     The Audit found that the "deteriorated" sidewalks "do not meet the requirements of the Americans with Disabilities Act (ADA) of 1990."

37.     The Audit found that, as of 2010, 8,705 City intersections, on roads that had been modified or repaired since 1992, contained non-ADA compliant curb ramps.

38.     The Audit found that, as of 2010, the City had 7,099 intersections, on roads that had been modified or repaired since 1992 without *any* ADA curb ramps where such ramps were needed.

39.     On February 1, 2017, Michelle Wynn, the program management officer for the Renew Atlanta Bond program, testified in a deposition[1] that, of the 15,804 intersections with either no curb ramps, or non-ADA compliant curb ramps, only an estimated 5% had been brought into compliance. (See Excerpts attached as Exhibit B to original *Class Action Complaint* [Doc. 1-2]).

40.     Furthermore, the 2010 Audit found that funding of $152.19 million would be necessary to address the backlog of deteriorated sidewalks, with $15.18

---

[1] Ms. Wynn was designated by the City as a witness under Rule 30(b)(6) to the Federal Rules of Civil Procedure in the case of *Beckley v. City of Atlanta*, Civil Action No. 1:16-cv-01435-MHC, which was brought by a paraplegic individual who was stranded at the intersection of Martin Luther King, Jr. Blvd. and Centennial Olympic Park Blvd. after the 2015 Peach Bowl, due to the lack of curb ramps at the intersection, requiring her to roll along the busy street in post-game traffic to get to her car.

million budgeted annually to maintain sidewalks.

41.     Ms. Wynn, in the February 1, 2017, deposition, testified that such funds have not been allocated, either to repair the backlog, or to fund ongoing maintenance.

42.     Ms. Wynn testified that some money was allocated for ramp repair as part of a "Quality of Life" bond; yet, "while you're bringing one part into compliance, there's something else that is deteriorating, worse."

43.     Ms. Wynn testified that the "Renew Atlanta Bond," which was approved by voters in March 2015, only allocated $5 million toward sidewalk and ADA updates.

44.     To date, the City has not allocated funds sufficient to make substantial progress in repairing the enormous and growing backlog of deteriorated, non-ADA compliant sidewalks.

45.     To date, the City has not dedicated any significant funding toward annual maintenance of its sidewalk and ramp inventory in order to ensure ADA compliance.

46.     Furthermore, the City is in breach of numerous obligations that it agreed to as part of a 2009 Settlement Agreement with the United States Department of Justice that was designed to bring the City in compliance with the ADA.

47.     In 2009, the Department of Justice (DOJ) and the City entered into a settlement agreement ("the Settlement Agreement") as a result of a DOJ compliance review under the Title II of the ADA. (See Exhibit C to original *Class Action Complaint* [Doc. 1-3]).

48.     The City agreed to implement a written process for soliciting and receiving input from individuals with disabilities on sidewalk accessibility, including requests to add curb ramps at particular locations, in compliance with 28 C.F.R. § 35.107(b), which requires the City to establish a grievance procedure for resolving complaints of Title II violations.

49.     The City also agreed to provide curb ramps or other sloped areas at all intersections of the streets, roads, and highways that had either been newly constructed or altered since January 26, 1992.

50.     On November 17, 2016, Lawrence Jeter, Senior Manager for the City's Department of Public Works, testified in a deposition[2] that, despite the 2009 Settlement Agreement, the City had not established a grievance procedure designed to allow disabled individuals to report non-compliant rights of way. (Excerpts Attached as Exhibit D to original *Class Action Complaint* [Doc. 1-4]).

51.     The City, moreover, has not complied with its obligations under the 2009 Settlement Agreement to bring into compliance even a significant number

---

[2] Mr. Jeter was also a designated 30(b)(6) witness in the *Beckley* litigation.

of non-compliant sidewalks and curb ramps along roads that were modified or
repaired since 1992.

52.    Plaintiffs do not seek here to enforce the 2009 Settlement Agreement;
rather, Plaintiffs cite the City's non-compliance with that Agreement as evidence
that the City has not complied with the ADA and Rehabilitation Act in its
maintenance of sidewalks.

53.    The Georgia Tech School of Civil and Environmental Engineering
has developed a "Sidewalk Sentry" application to allow users to report to a
central database sidewalks and curb ramps that are deteriorated or otherwise
non-accessible. As of March 9, 2018, there had been 2,158 individual reports of
defective rights of way.

54.    Exhibit E, which was attached to the original *Class Action Complaint*
[Doc. 1-5], contains a small sampling of the non-compliant curb ramps,
sidewalks, and other rights of way that have been identified via the Sidewalk
Sentry application.

55.    As a result of these systemic failures by the City, the individual
plaintiffs, and those similarly situated, are denied equal access to the City's
public rights of way, and the numerous benefits and opportunities available to
non-disabled people in the City of Atlanta.

56.    Each individual plaintiff is a person who, due to a mobility

impairment, is denied equal access to the City's rights of way. Therefore, each plaintiff has standing to seek the relief sought herein on behalf of him or herself and the members of the class.

57.     Each individual plaintiff has had numerous personal experiences with being unable to travel safely along public rights of way in the City due to non-compliant sidewalks.

58.     For example, in mid-2018, Ms. Lawson first encountered numerous intersections near the Studioplex building on Auburn Avenue with no curb cuts, impeding her travel and creating a dangerous condition. Where Auburn Avenue, Gaspero Street, and Airline Street meet, the absence of curb cuts at each place along the intersection prevented her from being able to safely cross the street. Where Gaspero Street meets Randolph Street, there is a missing curb cut, giving her no safe way to cross Randolph Street without going into traffic.

59.     In 2018, Ms. Lawson first encountered sidewalk intersections along North Highland Avenue that were inaccessible to her, including the intersections of North Highland Avenue and Kentucky Avenue, Rosewood Drive, and Bellevue Drive, where there is no curb cut to allow her to safely cross over these three streets without moving into the dangerous vehicle traffic on North Highland Avenue.

60.     In 2018, Ms. Lawson first encountered sidewalk intersections that

were inaccessible to her along North Pelham Road, including the intersections of North Pelham Road with Plymouth Road, Berkshire Road, and Pine Ridge Drive, where there were missing curb cuts so that she could not safely cross the street.

61.    On June 11, 2018, Ms. Lawson first encountered numerous sidewalks in the Vine City neighborhood that were broken and inaccessible, including sidewalks along Walnut Street and Foundry Street, and intersections without curb ramps, including the intersection of Walnut Street and Foundry Street. As a result of these conditions, Ms. Lawson could not travel on the sidewalks and was required to go into the roadway.

62.    Mr. Curtis, who lives in an apartment on Peachtree Road in Atlanta, has encountered numerous sidewalks and intersections that are not safely accessible to him.

63.    For example, on or about February 15, 2018, Mr. Curtis first encountered an intersection at Rivers Road and West Wesley Road, near his home, with no curb ramps to allow him to cross West Wesley Road.

64.    Also in 2018, Mr. Curtis first encountered numerous other places in the Peachtree Battle neighborhood with defective and inaccessible sidewalks. The sidewalks along West Wesley Road between Peachtree Avenue and Northside Drive are badly broken, making them impossible for him to safely travel along them. Along Peachtree Battle Road, between Peachtree Avenue and Northside

Drive, there are numerous places where the sidewalk is broken, and many
intersections with side roads with no curb cut to allow him to cross and travel
along Peachtree Battle Road.

65.     On June 11, 2018, Mr. Curtis first encountered numerous sidewalks
in the Vine City neighborhood that were broken and inaccessible, including
sidewalks along Walnut Street and Foundry Street, and intersections without
curb ramps, including the intersection of Walnut Street and Foundry Street. As a
result of these conditions, Mr. Curtis could not travel on the sidewalks and was
required to go into the roadway.

66.     Mr. Turner has encountered numerous sidewalks and intersections
that are dangerous and inaccessible to him because of his impairments.

67.     For example, in April of 2018, he first encountered sidewalks along
Decatur Road, on his path of travel to the King Historic District, that had broken,
dilapidated, and obstructed sidewalks, making it difficult for him to safely
navigate the sidewalks. The curb cuts at Decatur Street's intersection with Daniel
Street and Boulevard were broken and dangerous.

68.     In early 2018, while attending events in and around the state capitol
building related to the Georgia Council on Developmental Disabilities'
"Advocacy Days," Mr. Turner encountered dilapidated sidewalks that were
cumbersome and uncomfortable for him and fellow wheelchair users to navigate.

He encountered a curb ramp at the intersection of Mitchell Street and Washington Street that was too narrow, and was not flush with the road surface, making it dangerous to use.

69.    Each of the specific sites described above were on roadways that had been constructed, altered, or improved since January 26, 1992.

70.    Each of the specific sites were along or within roadways that had visibly fresh pavement and had clearly been repaved since January 26, 1992.

71.    The City's general practice is to repave the most heavily-trafficked roads, called "arterial" roads, every ten (10) to twelve (12) years.

72.    The City's general practice is to repave roads with moderate-to-heavy traffic, called "collector" roads, every fifteen (15) to twenty (20) years.

73.    The City's general practice is to repave local streets at least every thirty (30) years.

74.    Each plaintiff cites at least one example of non-compliant sidewalks along, or intersections within, "arterial" or "collector" roads that, under City practice, would have to have been repaved since January 26, 1992.

**V.     Class Action Allegations**

75.    Plaintiffs bring this action against the City of Atlanta pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves individually and all other persons similarly situated.

76.     Each member of the proposed class is a "qualified individual with a disability" and/or a person with a disability within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, who requires a wheelchair, scooter, or other assistive device for mobility on sidewalks, ramps and similar rights of way.

77.     Upon information and belief, the Class is composed of hundreds or thousands of individuals and is so numerous that joinder of all Class members would be impracticable.

78.     Each Class member is a qualified individual with a disability who was denied meaningful access and participation in the City's services, programs, or activities.

79.     Plaintiffs' claims are typical of the claims of other Class members.

80.     Plaintiffs will fairly and adequately represent the interests of the absent Class members.  Plaintiffs have no claims that are antagonistic to those of the Class.

81.     Plaintiffs' attorneys are experienced in the prosecution of litigation under the ADA and with class action litigation.

82.     There are questions of law and fact common to each of the Class members, the answers to which will advance the resolution of the claims of all the Class members, without limitation:

**a.** Whether Defendant is violating Title II of the ADA by failing to make its programs, services, and activities accessible to and useable by individuals with disabilities, resulting in discrimination against individuals with disabilities; and

**b.** Whether Defendant is violating Section 504 of the Rehabilitation Act by failing to make its programs, services, and activities accessible to and useable by individuals with disabilities, resulting in discrimination against individuals with disabilities.

83.    Certification is appropriate under Rule 23(b)(1) of the Federal Rules of Civil Procedure because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the Defendant.

84.    Certification is also appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because there are common issues of law or fact that predominate over issues affecting individual Class members and, in addition, a class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.

## VI.    Legal Claims

### Count I: Americans with Disabilities Act

85.    By this reference, Plaintiffs incorporate the above factual statements, as if fully stated herein.

86.     Title II of the ADA states:  "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.

87.     The ADA defines "public entity" as including "any State or local government."  42 U.S.C. §12115.

88.     The City of Atlanta is a "public entity" within the meaning of Title II and is therefore covered by the ADA.

89.     Further, Title II of the ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. §12115.

90.     Plaintiffs are qualified individuals with disabilities within the meaning of Title II and meet the essential eligibility requirements for the receipt of the City's services, programs, or activities.

91.     The City is required to operate its services, programs, or activities in such a way that "when viewed in its entirety, is readily accessible to and useable by individuals with disabilities."  28 C.F.R. §35.150(a).

92.     Public rights of way constitute an integral service, program, or activity within the meaning of Title II.  28 C.F.R. §35.102(a).

93.     A public entity engages in discrimination when its facilities are inaccessible or unusable because individuals with disabilities are either "excluded from participation in" or "denied the benefits of the services, programs, or activities." 28 C.F.R. §35.149.

94.     The definition of facilities, as referred to in the ADA, includes public rights of way.  28 C.F.R. §35.104.

95.     Facilities constructed after January 26, 1992 must "be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities."  29 C.F.R. §35.151(a)(1).

96.     Public entities that choose to alter existing public rights of way after January 26, 1992 must, "to the maximum extent feasible," do so "in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities."  28 C.F.R. §35.151(b)(1).

97.     Resurfacing roadways, and other roadway maintenance projects, are alterations within the meaning of the ADA.

Case 1:18-cv-02484-SDG   Document 12   Filed 08/03/18   Page 20 of 25

98.     A public entity must maintain all facilities that are required to be accessible to individuals with disabilities under the ADA.  28 C.F.R. §35.133(a).

99.     As described herein, the City maintains public rights of way that are not accessible to individuals with disabilities.

100.    The City has engaged in discrimination against Plaintiffs and those similarly situated by denying them meaningful access to the City's public rights of way. Hundreds of miles of the City's sidewalks, including thousands of intersections, are not accessible to and useable by persons with disabilities because of severe deterioration and architectural barriers. The City has constructed, caused, and/or failed to correct the deterioration and access barriers.

101.    Upon information and belief, the public rights of way described herein have been constructed, altered, or improved since January 26, 1992.  The City has failed to make altered public rights of way accessible to individuals with disabilities.

102.    The City has not, when altering existing public rights of way after January 26, 1992 has not, "to the maximum extent feasible," done so "in such a manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities."  28 C.F.R. §35.151(b)(1).

103.    As a result, Plaintiffs and other persons with disabilities lack equal and meaningful access to the City's services.  Plaintiffs must either remain segregated, unable to access the City's services, or risk severe injury by attempting to traverse hazardous, inaccessible public rights of way.

104.    The City has also failed to establish a grievance procedure for individuals seeking the repair or replacement of non-compliant rights away, as required by 28 C.F.R. § 35.107(b).

105.    Integration and accessibility to public rights of way are fundamental ADA protections.  Plaintiffs are entitled to relief under Title II of the ADA, including attorneys' fees and costs.

## Count II: Section 504 of the Rehabilitation Act

106.    By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

107.    The Rehabilitation Act provides that no entity receiving federal funds shall discriminate against an individual based on that individual's disability.

108.    The City of Atlanta is an entity that receives federal funds in numerous areas.

109.    "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

110.    "Discrimination" in this context includes the provision of public rights of way for pedestrians as a whole, yet not making reasonable modifications to those areas for people who rely on wheelchairs or similar mobility devices.

111.    As described herein, the City maintains public rights of way that are not accessible to all people who rely on mobility devices, including wheelchairs.

112.    Plaintiffs are entitled to relief under the Rehabilitation Act, including an order that the City make reasonable modifications to the public rights of way.

WHEREFORE, Plaintiffs pray:

a. That the Court certify the following Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

All persons with mobility impairments who have been denied equal access to pedestrian rights of way in the City of Atlanta as a result of the City's policies and practices with regard to repair and maintenance of its pedestrian rights of way.

b. That the Court appoint the firms of Radford & Keebaugh, LLC and Parks, Chesin & Walbert, P.C. as Class Counsel to represent the interests of the Class;

c. That the Court declare the City to be in violation of the ADA and Rehabilitation Act due to its failure to maintain its public rights of way in a manner equally accessible to disabled people;

d.  That the Court enter a permanent injunction,

    i.  Requiring the City to obtain an updated, comprehensive audit by a neutral third party approved by the Court, of the City's inventory of sidewalks and intersection access nodes, for purposes of determining ADA compliance;

    ii.  Requiring the City to allocate funds sufficient to bring currently non-compliant rights of way into ADA compliance;

    iii.  Requiring the City to bring currently non-compliant rights of way into ADA compliance;

    iv.  Requiring the City to establish a dedicated means by which individuals can report to the City rights of way that are not accessible to disabled people;

    v.  Requiring the City to budget future funds to maintain rights of way in an ADA-compliant manner;

    vi.  Requiring the City to maintain, on an ongoing basis, its public rights of way in a manner compliant with the ADA;

    vii.  Maintaining continuing jurisdiction for a reasonable period of time in order to ensure compliance with the Court's order;

    viii.  Appointment of Class Counsel to monitor compliance with the Court's order.

e. For a trial by jury;

f. That Class Counsel be awarded reasonable attorneys' fees and costs; and

g. That the Court grant other legal and equitable relief as the court finds appropriate.

Respectfully submitted this August 3, 2018.

/s/ James Radford
James Radford
Georgia Bar No. 108007
Regan Keebaugh
Georgia Bar No. 535500

RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com
regan@decaturlegal.com

/s/ Andrew Y. Coffman
Andrew Y. Coffman
Georgia Bar No. 173115
A. Lee Parks, Jr.
Georgia Bar. No. 563750
J. Daniel Cole
Georgia Bar No. 450675

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth Street, N.E., 26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
acoffman@pcwlawfirm.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing pleading using the CM/ECF system.

This August 3, 2018.

/s/ James Radford
JAMES RADFORD
Georgia Bar No. 108007
